IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALBERT BERNARD BELL,

    Petitioner,                      No. CIV S-05-0809 MCE GGH P

   vs.

M. EVANS, Warden,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction for aggravated sexual assault of a child involving sodomy (Cal. Penal Code § 269(a)(3)) and aggravated sexual assault of a child involving oral copulation (Cal. Penal Code § 269(a)(4)). The jury also found that petitioner had a prior burglary conviction. Petitioner was sentenced to 31 years to life in state prison.

        Petitioner challenges his conviction on one ground: the trial court erred in admitting evidence of a prior sexual crime for the purpose of proving his propensity to commit the charged offenses. After carefully considering the record, the court recommends that the petition be denied.

II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California Court of Appeal contains a factual summary of petitioner's trial. Although respondent did not submit the transcript from the trial, neither party disputes the factual background. Accordingly, the court will set forth this summary below:

Prosecution Case

Defendant's daughter, A.B., was born on October 27, 1992. She had been raised in Oakland by defendant's aunt, Lucille Roberson, from the age of 10 months. She saw defendant on the weekends and knew he was her father. During the summer of 2000, A.B. lived with defendant, defendant's father, Sidney Bell, her brother, Arsidneio, and her sister, Joy. A.B. returned to live with Roberson when

school started in the fall of 2000.

Defendant picked up A.B. from Roberson's home on the day before Thanksgiving in 2000. That night, defendant took A.B. into the basement of his father's house in Vallejo, where he lived, and sodomized her. A.B. was crying and told defendant to stop because it hurt. Defendant held his hand over her mouth, telling her to "[b]e quiet." He repeated, "It's almost over, it's almost over..." This incident lasted about three minutes.

Defendant returned A.B. to his cousin Kecia Mariland's home on Thanksgiving Day at about 2:00 p.m. A.B. did not appear upset, withdrawn or bruised. The following Sunday, A.B. described the molestation to Roberson. A.B. had told Roberson "the same thing" sometime in the summer, but Roberson had not paid attention to it. Roberson called Mariland, who immediately picked up A.B. and took her to the hospital. A.B. told Mariland that defendant "stuck his thing in her bottom" and that he said if she told anyone "he would get her."

Registered nurse Lisa Lawis-Javar examined A.B. at the hospital. A.B. had "anal relaxation or laxity," meaning that her anus was opened involuntarily in less than 30 seconds with no stool in the rectal vault. This was consistent with prior anal trauma. In A.B.'s case, her anus opened involuntarily in 20 seconds. Nurse Lawis-Javar also noticed thickening in A.B.'s hymenal ring. Although the thickening could be associated with hormonal changes, Lawis-Javar thought that A.B.'s hymen was more thickened than she would have expected for a child A.B.'s age. The thickened hymen was consistent with multiple digital penetrations over time. Nurse Lawis-Javar had been told that A.B. had a playground injury in 1997. This prior "straddle injury" caused a blood blister on A.B.'s labia; however, it was not significant to Nurse Lawis-Javar's findings with respect to A.B.'s hymen and anus.

A.B. testified that defendant sodomized her more than 10 times during the summer that she lived with him. She could not recall whether the first time was during the school year or the summer, but it happened in the basement at night. Sometime before Thanksgiving 2000, A.B. went to defendant's house. A.B. and her brother slept on the floor of the dining room area with some blankets. After she fell asleep, defendant woke A.B. and took her outside to a blue truck. Defendant told her to be quiet and then sodomized her. A.B. screamed because "it hurt really bad" when defendant put his penis in her "butt." It lasted about three minutes. A.B. said defendant's penis went "in and out" about seven times.

A.B. also described an incident in the summer when defendant forced her to orally copulate him while they were in a white car. They were returning to Robertson's house. Defendant made A.B. "suck [his penis] again and again." Defendant put some lotion on his penis and moved his hand up and down on it. He then made A.B. suck his penis. "Some white stuff" came out of defendant's penis, and defendant tried to make A.B. "suck it." This happened many times. A.B. also testified that defendant sodomized her multiple times.

On four occasions, defendant touched A.B.'s vagina. Defendant put his hands under A.B.'s clothes and touched the outside of her vagina. The first time, A.B. thought she was eight. It happened in the basement. A.B. also described an

occasion where defendant put his finger inside her vagina.

Prior Sexual Offense Evidence

J.B., defendant's cousin, visited her family in California during the summer of 1989. She was 14 years old at the time. When she and defendant were alone in his house, defendant asked J.B. to help him clean up his room. He told her to look out the window at a girl, so J.B. leaned across the bed next to the window and looked out.

Defendant started rubbing J.B.'s buttocks with his hand. She asked him to stop, but he continued rubbing and said, "It's okay." When J.B. tried to get off the bed, defendant pushed her down on the bed. He pulled down her skirt and stockings and unzipped her pants. J.B. told defendant to stop, but he did not. Defendant raped her. During the rape, defendant repeatedly said, "It's going to be okay." The rape ended after another of J.B.'s cousins began knocking on the door. Defendant told J.B. to go to the bathroom and clean herself up. J.B. was bleeding and had "yellow stuff" coming out of her. Later, defendant told J.B. not to tell anyone what had happened. J.B. told a close cousin about the incident one or two days later.

Defense Case

Defendant testified that he pleaded guilty to unlawful sexual intercourse with a minor as a result of the encounter with J.B. in 1989 and was placed on probation. He went to prison for a burglary conviction and was paroled in 1999. In the summer of 2000, defendant was living at his father's home and his girlfriend Geneva Baskerville's house, and was caring for Arsidneio, A.B. and Joy. He and the three children stayed at Baskerville's house on Thanksgiving Eve 2000.

Arsidneio testified that he and his sisters stayed with defendant at Baskerville's home on Thanksgiving Eve 2000.

Defendant denied ever touching A.B. in an inappropriate manner. He denied ever being in the basement with A.B. or taking her into a blue truck and sodomizing her. He also denied having A.B. orally copulate him in his car while driving on the freeway. While living with his father, defendant frequently put things in the basement for storage, and each time his father had to open the door with his key. The basement was locked at all times, and only defendant's father had a key. Defendant's father testified that he never saw or heard anything unusual occur between defendant and defendant's children. Defendant owned a white car but never had a blue truck. There was a blue van abandoned in front of his property in October 2000, but he did not recall the van being there in November 2000. Defendant brought all three children over to the father's home at other times in November 2000, but not on Thanksgiving Eve.

Respondent's Exhibit 2, pp. 2-4.

/////

/////

IV. Discussion

Petitioner argues that the trial court improperly admitted J.B.'s testimony regarding the sexual assault that occurred in 1989. Petitioner does not appear to argue that admission of prior similar crimes to show propensity in a sexual case violates due process per se. Such a claim would be without merit because the United States Supreme Court has expressly declined to rule on the constitutionality of the use of propensity evidence. See Estelle v. McGuire, 502 U.S. 62, 75 n. 5, 112 S. Ct. 475 (1991). And, of course, petitioner's problem is exacerbated by the fact that previous sexual misconduct is permitted in federal criminal trial. See United States v. LeMay, 260 F.3d 1018, 1026 (9th Cir. 2001). Because there is no United States Supreme Court precedent holding that admission of evidence of prior sexual misconduct to show propensity violates due process, a state court finding rejecting such a claim could not be contrary to nor an unreasonable application of clearly established Supreme Court authority.

Petitioner's claim appears to be that J.B.'s testimony was not admissible under state law, and that admission of this testimony resulted in a due process violation. The legal standard for this claim is as follows.

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the

evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480. The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482. Habeas review does not lie in a claim that the state court erroneously allowed or excluded particular evidence according to state evidentiary rules. Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

The California Court of Appeal found that the trial court properly admitted J.B.'s testimony:

> Evidence Code § 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible by Section 352." In enacting section 1108, the Legislature "'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness.' [Citation.]" (People v. Soto (1998) 64 Cal.App.4th 966, 983.)
>
> However, in applying Evidence Code section 1108, the trial court's discretion to exclude such "propensity" evidence under Evidence Code section 352 provides an essential safeguard: "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and

possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (People v. Falsetta (1999) 21 Cal.4th 903, 917.)  On appeal, we will not disturb the trial court's exercise of discretion to admit prior offense evidence "unless the court acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (People v. Yovanov (1999) 69 Cal.App.4th 392, 406.)

Defendant argues that the incident involving J.B. was of little probative value because it was dissimilar to and remote in time from the offenses for which he was on trial.  Defendant emphasizes the following distinctions: (1) the prior offense involved a post-pubescent 14-year-old girl; the uncharged offenses involved a pre-pubescent 8-year-old girl; (2) the prior offense involved intercourse; the charged offenses were for oral, anal, and digital sex acts; (3) the prior offense occurred 11 years before the charged offenses, at a time when the defendant was only 21.

Defendant likens this case to People v. Harris (1998) 60 Cal.App.4th 727 (Harris). Harris was a mental health nurse accused of taking sexual liberties with two patients in 1995. (Id. at pp. 727-732.) One of the victims was incapacitated at the time Harris was alleged to have touched and fondled her, and the other had engaged in consensual sex with Harris a few days before he forced himself on her. (Id. at pp. 731-732.) Harris claimed in his defense that the first patient had hallucinated the sexual assault while the second had consented to have sex with him. (Id. at p. 732.)

More than 20 years earlier, Harris had been prosecuted for an attack on a female resident of his apartment building.  Harris had entered her apartment at night, beaten her unconscious, and inflicted extensive injuries to her vagina and rectum with a sharp instrument. (Harris, supra, 60 Cal.App.4th at p. 773.) The defendant had been found hiding nearby with blood on his thighs and penis. (Ibid.) Harris had been convicted of first degree burglary with infliction of great bodily injury in connection with these events. (Id. at p. 735.) During Harris's trial on the 1995 charges, the prosecution put a redacted description of the prior crime in evidence, recounting the victim's appearance and injuries when the police arrived and the fact that Harris had been found nearby with blood on his clothes and penis. (Id. at pp. 734-735.) The jury convicted Harris of several sexual offenses against the two patients. (Id. at p. 727.)

The Court of Appeal reversed.  It held that evidence of the 1972 attack should have been excluded because that evidence was "remote, inflammatory[,] nearly irrelevant and likely to...distract [the jury] from the consideration of the charged offenses." (Harris, supra, 60 Cal.App.4th at p. 741.) In discounting the evidence's probative value, the appellate court emphasized the following factors: 1) the 1972 offense involved an unexplained outburst of sexual violence directed against a stranger whereas the current charges accused Harris of exploiting his

position as a caregiver to obtain sexual gratification; 2) although the crimes were asserted to be similar in that all three alleged victims were females in their "20's or 30's," most victims of sexual assault in fact meet the same description; 3) the prior crime was remote in time. (Id. at pp. 738-741.) Based on these factors, the appellate court concluded that evidence of the prior crime did not bolster the credibility of Harris's current accusers nor detract from the evidence impeaching their stories. (Id. at p. 740.)

On the issue of potential prejudice, the court found the prior crime evidence extremely inflammatory because it involved much more egregious conduct and injuries than the charged offenses. (Harris, supra, 60 Cal.App.4th at p. 738.) Moreover, the jury heard a truncated description of the crime, and learned that Harris had only been convicted of burglary with infliction of great bodily injury for committing it. (Id. at pp. 738-739.) Thus, the prior offense evidence might have caused jurors to speculate improperly about the true nature of the crime and whether Harris had suffered sufficient punishment for committing it. (Ibid.) We do not find Harris persuasive in the context of this case. Here, the defendant's prior crime was neither drastically more serious in comparison to the charged offenses nor was it of a wholly different nature. To the contrary, the testimony concerning defendant's rape of J.B. was far less inflammatory than evidence that defendant had forced his 8-year-old-daughter to repeatedly engage in sex acts with him over an extended period of time. At the same time, the charged and prior offenses bore the overriding similarity that both alleged victims were young, female relatives of defendant's.

The willingness to commit sexual offenses against young children, much less against young relatives, is not common to most individuals. (See People v. Callahan (1999) 74 Cal.App.4th 356, 367.) Evidence of defendant's prior sexual offenses against another underage relative is for that reason rationally probative of his willingness to commit such crimes against his child. (Ibid.) Moreover, sex offenders need not be "specialists" who invariably engage in the same type of conduct with the same type of victim. (Id. at p. 368.) Thus, the fact that the victims differed in age or that the defendant engaged in different sexual acts with them does not diminish the probative force of the evidence that it must be excluded. In addition, the 10-year gap between the current and charged offenses also does not fatally impair its probative value. (Cf. People v. Frazier (2001) 89 Cal.App.4th 30 [15-or16-year gap between prior and charged offense].) In this case, unlike Harris, it cannot be convincingly argued that evidence of defendant's sexual assault on J.B. lacked any significant probative value or did nothing to enhance the credibility of A.B.'s testimony.

Defendant concedes that the prior offense testimony in this case was not as inflammatory as Harris. This is a crucial distinction for purposes of Evidence Code section 352. The risk of jury distraction is greatly diminished when, as in this case, the current offense is much more serious than the old offense. Defendant claims prejudice in this case because after hearing J.B. testify that defendant raped her, the jury learned that he was convicted of the less serious offense of statutory rape. Aside from the fact that it was the defense, not the prosecution, that elicited testimony about defendant's guilty plea and sentence, we do not find it very likely that the jury would have been so preoccupied with defendant's punishment for raping a cousin 10 years earlier that it could not

9

> properly focus on whether he had committed repeated sexual assaults on his daughter.
>
> Taking into account all of the factors made relevant under Evidence Code section 352, we find no abuse of discretion in the admission of J.B.'s testimony. As defendant anticipates, we also reject his federal due process claim.

Respondent's Exhibit 2, pp. 5-8.

In order for the application of California evidence law to violate fundamental fairness, it would have to be so palpably, transparently in error that no reasonable jurist would uphold it. This scenario is not even close in this case.

Because the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority, petitioner's application for a petition for writ of habeas corpus should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 1/17/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
bell809.157